# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO,** | ) ) ) ) | |
| **Plaintiff,** | ) | **Civ. Act. No. 06-0053 (EGS)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **FEDERAL AVIATION ADMINISTRATION,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, defendant, the Federal Aviation Administration (FAA), respectfully moves for summary judgment. As grounds for this motion, defendant asserts that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. A memorandum of points and authorities, a statement of material facts not in genuine dispute, and a proposed order granting the relief sought are attached hereto.

Respectfully submitted,

/s/

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

/s/

_____
RUDOLPH  CONTRERAS, D.C. Bar #  434122
Assistant United States Attorney

                                                      /s/
_____

_____
                        HEATHER D. GRAHAM-OLIVER
                        Assistant United States Attorney
                        Judiciary Center Building
                        555 4th St., N.W.
                        Washington, D.C.  20530
                        (202) 305-1334

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL AIR TRAFFIC | ) | |
| CONTROLLERS ASSOCIATION, | ) | |
| AFL-CIO, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. Act. No. 06-0053 (EGS) |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL AVIATION | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to LCVR 7 (h), the defendant submits this statement of material facts as to which there are no genuine dispute.

1. By letter dated August 10, 2005, the National Air Traffic Controllers Association (NATCA), AFL-CIO, submitted a request under the FOIA for records relating to the FAA's New York Terminal Radar Control (TRACON) Assessment, which culminated in a report issued on June 2, 2005. Declaration of Melanie Yohe (Yohe Decl.) ¶ 5. This report was released to the public on June 2, 2005. Complaint ¶ 5.

2. By letter dated September 13, 2005, the FAA acknowledged receipt of NATCA's FOIA request pertaining to the New York TRACON Assessment. The letter noted that the request had been assigned for action to the FAA's Eastern Region office. Complaint ¶ 7.

3. By letters dated October 4, 2005, the FAA informed NATCA that its FOIA request had been forwarded to the FAA's Washington Headquarters, Office of Air Traffic Organization and that the request had been incorrectly assigned to the FAA's Eastern Region. Complaint ¶ 8.

4.  On October 31, 2005, the FAA sent an e-mail to NATCA acknowledging that NATCA had agreed to extend the time limit for the FAA's production of records to November 30, 2005. Complaint ¶ 9.

5.  By letter dated November 30, 2005, the FAA informed NATCA that it had been unable to retrieve the records requested by their FOIA request and asked for another extension of time for complying with the request until January 18, 2006.  Complaint ¶ 10.

6.  NATCA denied the FAA's request for an extension to January 18, 2006 and requested that the FAA immediately provide the pertinent information.  Complaint ¶ 11.

7.  This action was filed by NATCA in the United States District Court for the District of Columbia on January 12, 2006.  <u>See</u> Complaint.

8.  The FAA began a rolling production of documents, whereby they released records to NATCA as soon as they had been collected, reviewed and redacted, in those cases where redaction was necessary.  The FAA's first release of records to NATCA was on March 28, 2006. There were four other releases of records on April 24, 2006, April 28, 2006, May 5, 2006, and May 8, 2006.  Declaration of Sheila Skojec (Skojec Decl.) ¶ 4.

9.  The total production consisted of 5 boxes of records, which were in the form of paper documents and data on compact disks.  Skojec Decl. ¶ 5.

10.  The parties have conferred and agreed that some of the redacted documents, listed in the <u>Vaughn</u> index, are not in contention.  <u>See</u> <u>Vaughn</u> index.

Respectfully submitted,


/s/

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


/s/

_____
RUDOLPH  CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s/

_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **NATIONAL AIR TRAFFIC** | ) | |
| **CONTROLLERS ASSOCIATION,** | ) | |
| **AFL-CIO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civ. Act. No. 06-0053 (EGS)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **FEDERAL AVIATION** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, plaintiff

NATCA alleges that the FAA improperly withheld documents to which it is legally entitled.  In

response to the FAA's August 10, 2005, FOIA request, the FAA conducted a careful and

thorough search for responsive records and released the majority of the requested documents in

full.  The FAA withheld some documents in part due to FOIA Exemptions (b) (4), (b)(5) and

(b)(6).  As the Declarations of Melanie Yohe ("Yohe" Decl.), Sheila Skojec ("Skojec" Decl.) and

James Fossey, ("Fossey" Decl.) evidence, the FAA's search was adequate and its redacting of

information proper under applicable law.  Sheila Skojec, a Senior Attorney in the Office of the

General Counsel at the FAA, worked with other FAA officials and employees in collecting,

reviewing and releasing documents to NATCA.  Skojec Decl. ¶ 1, 3.  As a part of this process,

the FAA released to NATCA all reasonably segregable factual material contained in the

documents.  Id., at ¶ 6.  The only instances in which the FAA did not release factual material

were those in which the factual material is inextricably intertwined with the deliberative process

material, commercial and financial information, or information that would invade an individual's

privacy interest. Id. Thus, there is no genuine issue as to any material fact and any further

information is exempt from disclosure under applicable FOIA exemptions. The FAA, therefore,

is entitled to summary judgment in this action as a matter of law.

## ARGUMENT

### A. Summary Judgment Standard

In a FOIA/PA action, summary judgment is appropriate when, as here, the pleadings,

together with the declarations, demonstrate that there is no genuine issue of material fact in

dispute and that the moving party is entitled to judgment as a matter of law. Fed. R Civ. P. 56(c);

Weisberg v. Department of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). The Court exercises de

novo review over FOIA matters, and the burden is on the agency to justify all non-disclosures.

5 U.S.C. § 552(a)(4)(B); Department of Justice v. Reporters Comm. For Freedom of the Press,

489 U.S. 749, 755 (1989). In carrying its burden, agencies may rely on declarations of

government officials which courts normally accord a presumption of expertise in FOIA as long

as the declarations are sufficiently clear and detailed and submitted in good faith. Oglesby v.

Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); see Hayden v. National Security Agency,

608 F.2d 1381, 1387 (D.C. Cir. 1979). Once the Court determines that the declarations are

sufficient, it need not inquire further. Students Against Genocide v. Department of State, 257

F.3d 828, 833 (D.C. Cir. 2001) (In FOIA cases, an agency "is entitled to summary judgment if no

material facts are in dispute and if it demonstrates 'that each document that falls within the class

requested either has been produced . . . or is wholly exempt from the Act's inspection

requirements'.") (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)); see also, Burnes

2

v. CIA, No. 05-242 , U.S. Dist LEXIS 20114 at *2-7 (D.D.C. Sept. 14, 2005) (a copy of the

opinion is attached hereto).  A court "may award summary judgment [in a FOIA case] solely on

the basis of information provided by the department or agency affidavits or declarations." Burns

v. CIA, 2005 U.S. Dist LEXIS 20114; see also, Hayden v. National Sec. Agency, 608 F.2d 1381,

1386-87 (D.C. Cir. 1979).

Regarding the adequacy of the search, to satisfy the requirements for summary judgment,

all the agency need do is produce "an affidavit reciting facts which enable the District Court to

satisfy itself that all appropriate files have been searched." Church of Scientology v. IRS, 792

F.2d 146, 151 (D.C. Cir. 1986).  "[I]n the absence of countervailing evidence or apparent

inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the

search conducted by the agency will suffice to demonstrate compliance with the obligations

imposed by FOIA." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).

Here, summary judgment should be entered in favor of the FAA because, as the attached

Yohe and Fossey Declarations show, the FAA conducted a reasonable and adequate search and

any information that fell within the class of documents plaintiff requested was either produced or

is exempt from disclosure under FOIA.  Students Against Genocide v. Department of State, 257

F.3d at 833.  The declarations contain reasonable specificity of detail regarding the search and the

reasons for the withholding, in part, of the information not produced to plaintiff.  The FAA's

judgment regarding the production or withholding of information objectively survives the test of

reasonableness, good faith, specificity, and plausibility.

### B.  The FAA's Search Was Entirely Adequate

In FOIA cases, "the Court's inquiry regarding the adequacy of the search focuses on the

search itself, not its results." See Burnes v. CIA, No. 05-242, U.S. Dist LEXIS 20114 at *2-7

(D.D.C. Sept. 14, 2005) (attached), citing Weisberg v. United States Dep't of Justice, 240 U.S.

App. D.C. 339, 745 F.2d 121, 126 (D.C. Cir. 1982).  To fulfill an agency's obligations under

FOIA,  the agency must demonstrate that it has conducted a "search reasonably calculated to

uncover all relevant documents." Steinberg v. U.S. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir.

1994).  But the search need only be reasonable; it does not have to be exhaustive.  Miller v.

United States Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985).  In other words, "[t]he question

is not 'whether there might exist any other documents, but rather whether the *search* for those

documents was adequate.'"  Steinberg v. U.S. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994)

(emphasis in original).  Merely because an agency is unable to find a particular document a

requestor believes that it should have, does not render its search inadequate.   Wilbur v. CIA, 355

F.3d 675, 678, (D.C. Cir. 2004); Nation Magazine v. United States Customs Serv., 315 U.S.

App. D.C. 177, 71 F.3d 885, 892 n. 7 (D.C. Cir. 1987).

     Here, as explained by Ms. Yohe, the FAA conducted a reasonable, diligent, and adequate

search.  Ms. Yohe was involved in coordinating the collection of records for NATCA's FOIA's

request.  Yohe Decl. ¶ 6.   The FAA maintains paper and electronic files concerning particular

projects, employees, and contractors.  Id.  The offices searched were those involved in the New

York TRACON Assessment (Assessment), including that of the Administrator, the Deputy

Administrator, the Chief of Staff, the Administrator's speechwriter, Public Affairs, the Chief

Counsel, the Air Traffic Organization, Civil Aviation Security, Government & Industry Affairs,

Human Resources, and Aviation Medical.  The individual offices maintain their own paper and

electronic mail files.  All files reasonably expected to contain the requested records were

searched.  Id.  The search terms used included, but were not limited to the following: "N90,"

"New York TRACON," "Assessment," and "Overview".  Also, depending on the particular

information requested, the FAA searched "by name" for personnel and other information

concerning employees and for information concerning contractors involved in the Assessment.

Id.

The search uncovered approximately five boxes of records.  Id., at ¶ 7.  It is the FAA's

policy and practice to maximize disclosure in response to FOIA requests.  Id.  The FAA has

released much of the information in full, redacting the minimum amount possible.  Id.

In sum, the undisputed evidence demonstrates that the search conducted by FAA was reasonable

and done in good faith.  The files of each office likely to have records responsive to the request

were searched.  Id., at ¶ 6.  Because the FAA has set out detailed facts establishing that the search

was reasonable, summary judgment on this point should be granted.

### C.  The FAA Properly Invoked applicable FOIA Exemptions.

As stated in the Declaration of James Fossey, the FAA withheld documents in part

pursuant to FOIA Exemptions (b) (4), (b)(5) and (b)(6).  As set out more fully below, FAA's

assertion of these exemptions is justified under the law.

### 1.  FOIA Exemption (b)(4)

Exemption 4 of the FOIA permits an agency to withhold "trade secrets and commercial or

financial information [that was] obtained from a person [and is] privileged or confidential."  5

U.S.C. § 552(b)(4).  As this Court has recognized, the legislative history of FOIA "firmly

supports the inference that [Exemption 4] is intended for the benefit of persons who supply

information."  Public Citizen Health Research Group v. FDA, 185 F.3d 898, 904 (D.C. Cir.

1999) (citing National Parks & Conservation Ass'n. v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974)).

In Critical Mass Energy Project v. NRC, 975 F.2d 871 (D.C. Cir. 1992) (en banc), cert. denied, 507 U.S. 984 (1994), the test which was established for determining whether information is confidential for purposes of Exemption 4 turns on whether its submission to the federal government was voluntary or required.  The Court held that Exemption 4 protects "any financial or commercial information provided to the Government on a voluntary basis if it is of a kind that a provider would not customarily release to the public." Id. at 872.  In contrast, with respect to records required to be submitted, Exemption 4 protects as confidential "'any financial or commercial information whose disclosure would be likely either (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" Id. at 878, quoting National Parks, 498 F.2d at 770.

The Critical Mass standard is less stringent than that enunciated in National Parks, and the party seeking to invoke Exemption 4 for voluntarily-submitted records has a lesser burden to meet.[1] Cortez II Service Corp., Inc. v. NASA, 921 F. Supp. 8, 12 (D. D.C. 1996).  This Circuit intentionally chose in Critical Mass to adopt an "objective," easily-applied, "categorical rule," applicable to all voluntary submissions, both because it "recognize[d] a private interest in preserving the confidentiality of information that is provided the Government on a voluntary basis", 975 F. 2d at 879, and because it sought to eliminate the need for complex factual inquiries

---

[1]     The agency invoking Exemption 4 for voluntary submissions need only "meet the burden of proving the provider's custom" with respect to the release of the contested information to the public.

into the possibility of developing information by other means that had arisen in Exemption 4 cases under the National Parks standard. (See, e.g., Worthington Compressors v. Costle, 662 F.2d 45 (D.C. Cir. 1981); Greenberg v. FDA, 803 F.2d at 1216.) Id. at 877. "...[W]hen the Government receives information voluntarily, it has a strong interest in ensuring continued access, and therefore both the Government and private interests weigh against overly broad disclosures." Center for Auto Safety v. National Highway Traffic Safety Administration, 244 F.3d 144, 148 (D.C. Cir. 2001).

Exemption 4 operates to protect from disclosure the material at issue here. The material withheld by the FAA pursuant to Exemption 4 relates to the names of independent contractor employees and subcontractors, as well as salary and pricing information. See Vaughn Index, documents numbered 1-5 and 216.

As a voluntary submission, it is necessary to demonstrate that all of the information withheld pursuant to Exemption 4 was of a kind that a provider would not customarily release to the public." Critical Mass Energy Project, 975 F.2d at 872. The contractor objects to the release of this information due to concerns about employee raiding and underbidding by competitors. Fossey Decl. ¶ 16. Disclosure of the information withheld, pursuant to Exemption 4, would cause competitive harm and deter the willingness of private companies to share this type of information with the federal government. Thus, FAA properly withheld information pursuant to Exemption 4.

## 2. FOIA Exemption (b)(5)

Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), exempts from mandatory disclosure under the FOIA materials consisting of "inter-agency or intra-agency memorandums or letters

which would not be available by law to a party . . . in litigation with the agency." In the instant

case, Exemption 5 was asserted by the FAA to protect information that falls within the

deliberative process privilege.

The Supreme Court has held that Exemption 5 of the FOIA incorporates the

government's deliberative process privilege, the ultimate purpose of which is to prevent injury to

the quality of agency decision-making. NLRB v. Sears Roebuck & Co., 421 U.S. 132, 150-51

(1975). In order for this privilege to be properly invoked, defendant must show first that the

document is predecisional, i.e., that it preceded any final agency action on the matter it addresses.

To show that a document is predecisional, the agency need not identify a specific final agency

decision. Rather, it is sufficient to establish "what deliberative process is involved, and the role

played by the documents in issue in the course of that process." Coastal States Gas Corp. v.

Department of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980). Second, defendant must show that

the document contains deliberative information, i.e., that it makes recommendations or expresses

opinions on matters facing the agency. Mapother v. Department of Justice, 3 F.3d 1533, 1537

(D.C. Cir. 1993); Petroleum Info. Corp. v. Department of the Interior, 976 F.2d 1429, 1434 (D.C.

Cir. 1992). Deliberative documents frequently consist of "advisory opinions, recommendations,

and deliberations comprising part of a process by which governmental decisions and policies are

formulated." NLRB v. Sears, Roebuck & Co., 421 U.S. at 150. Thus, the exemption covers

recommendations, draft documents, proposals, analyses, suggestions, discussions, and other

subjective documents that reflect the give-and-take of the consultative process. See Coastal

States, 617 F.2d at 866.

In response to serious allegations of unreported operational errors and understaffing at the

8

New York TRACON facility, the FAA sent an assessment team to the New York TRACON on March 2, 2005. Within the Air Traffic Organization, this facility is designated as "N90". The team was comprised mostly of air traffic personnel with experience in safety investigations and facility management, although human resources and other personnel were also included. Fossey Decl., ¶ 5.

During the on-site review, which lasted 60 days, the FAA reviewed operational data, including radar and voice data, scheduling practices, shift and area assignments, use of leave and credit hours, overtime, time on position, management effectiveness, lab management relations and workers' compensation claims. Team members observed the control room environment and conducted interviews with managers, supervisors, and employees. The FAA also hired independent experts to study staffing numbers, workers' compensation claims, sick leave usage, and traffic level complexity at the facility. Id., at ¶ 6.

The Assessment culminated in a report issued on June 2, 2005.[2] Id., at ¶ 7. Essential to the assessment and to the preparation of the final report were open, frank, and candid discussions between team members and other FAA personnel. Id., at ¶ 8. The release of the redacted information identified in the Vaughn index as deliberative and protected by Exemption 5 (Docs 6, 8, 11-15, 18-20, 23, 25-26, 29-30, 46, 49, 55-100, 102-189, 193-214) would discourage the open, frank and candid discussions between the agency employees that are critical to the FAA's decision-making process and to the public good. It would also create confusion in those cases

---

[2] The scope of NATCA's FOIA request has been clarified by the parties as being limited to records dating from the commencement of the assessment on March 2, 2005, until the issuance of the final report on June 2, 2005. The final report was released to the public in full on June 2, 2005.

where preliminary data later turned out to be incorrect or where certain recommendations and opinions are not adopted.  For these reasons, it is essential for the overall effectiveness of the agency's decision making process that the redacted and withheld deliberative material be protected from disclosure under the FOIA.  Id., at ¶ 17.

Accordingly, this Court should grant summary judgment on this ground.

### 3. FOIA Exemption (b)(6)

Exemption 6 of the FOIA provides for the withholding of matters contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  In a definitive opinion on the meaning of the term "similar files," the Supreme Court held that Exemption 6 "'[was] intended to cover detailed government records on an individual which can be identified as applying to that individual.'"  Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11, reprinted in 1966 U.S. Code Cong. & Admin. News 2428); New York Times Co. v. NASA, 920 F.2d 1002, 1005 (D.C. Cir. 1990 (en banc).  Thus, all information that "applies to a particular individual" meets the threshold requirement for Exemption 6.  Department of State v.  Washington Post Co., 456 U.S. at 599-603.

In this case, the release of that portion of the redacted material identified in the index as protected by Exemption 6 (Docs. 19, 30) would constitute a clearly unwarranted invasion of privacy.  Id., at ¶ 18.  This material included personal e-mail addresses of employees and their personal -home and cellular- telephone numbers.  As this information can "be identified as applying to [a particular] individual,"  Washington Post Co., 456 U.S. at 602, the information easily satisfies Exemption 6's threshold requirement.

10

Having established that the withheld information meets the threshold requirement of Exemption 6, a determination must then be made as to whether disclosure would constitute a "clearly unwarranted invasion of personal privacy."  This requires a balancing of the public interest in disclosure against the individual privacy interest which would be invaded by release of the information.  See Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989) [Reporters Committee]; Department of the Air Force v. Rose, 425 U.S. 352, 372 (1976).

The disclosure of personal information about individuals, such as personal e-mail addresses of employees and employee's personal telephone numbers, is simply not relevant to the public's understanding of the FAA's conduct of its business.  Fossey Decl. ¶ 18.

### D.  The FAA Properly Evaluated Documents for Segregabililty

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Billington v. Dep't. of Justice, 233 F.3d 581, 586 (D.C. Cir. 2000); Krikorian v. Dep't. of State, 984 F.2d 461, 466 (D.C. Cir. 1993); Mead Data Cent., Inc. v. United States Dep't. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  The agency must provide a "detailed justification" to demonstrate that all reasonably segregable information has been released, Mead Data, 566 F.2d at 261, and show "with reasonable specificity" why a document cannot be further segregated.  Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Here, the FAA has met its segregability obligation. First, the FAA has set forth in its

11

sworn declarations that all of the records responsive to the Plaintiff's FOIA request have been reviewed  and all reasonably segregable non-exempt information has been released.  Yohe Decl. ¶¶ 6-7; Skojec Decl. ¶ 6.  Second, the agency's release of documents with appropriate redactions, rather than withholding these documents, demonstrates that the CIA reviewed all records carefully and determined what portions could be released and what portions needed to be withheld.

In this case, the FAA expressly considered the segregability issue and concluded that no additional information could be released to plaintiff.  Skojec Decl. at  ¶ 6.  Its withholdings are specifically justified in its declaration and Vaughn  Index submitted in support of this motion. The FAA properly concluded that no further information could be released without compromising information exempt under the claimed exemptions.

## CONCLUSION

The un-controverted evidence demonstrates that the FAA conducted an adequate search and properly withheld information exempt under the FOIA.  Accordingly, the FAA respectfully requests that this Court grant its Motion for Summary Judgment, and enter final judgment on behalf of the defendant.

Respectfully submitted,


/s/

_____

KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


12

/s/

_____
RUDOLPH  CONTRERAS, D.C. Bar #  434122
Assistant United States Attorney


/s/

_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
 (202) 305-1334