IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL AIR TRAFFIC
CONTROLLERS ASSOCIATION,
AFL-CIO,

          Plaintiff,

-vs-                            Case No. 1:06CV00053-EGS

FEDERAL AVIATION
ADMINISTRATION,

          Defendant.
_____/

## DECLARATION OF JAMES FOSSEY

I, James Fossey, declare the following to be a true and correct statement:

1. I am the Director of Safety Evaluations in the Safety Division of the Air Traffic Organization at the Federal Aviation Administration. My office is located at 800 Independence Avenue, Washington, DC 20591.

2. I have served in my present position for 2.5 years.

3. As Director of Safety Evaluations I am responsible for the evaluation of all civilian air traffic control facilities.

4. I base my statements in this declaration on my review of records in my office, my own personal knowledge, and knowledge I have acquired through performing my official duties.

5. In response to serious allegations of unreported operational errors and understaffing at the New York Terminal Radar Control (TRACON) facility, the FAA sent an assessment team to the New York TRACON on March 2, 2005. Within the Air

Traffic Organization, this facility is designated as "N90." The team was comprised mainly of air traffic personnel with experience in safety investigations and facility management, although human resources and other personnel were also included. I was assigned to lead the assessment.

6. During the on-site review, which lasted 60 days, we reviewed operational data, including radar and voice data, scheduling practices, shift and area assignments, use of leave and credit hours, overtime, time on position, management effectiveness, lab management relations and workers' compensation claims. Team members observed the control room environment and conducted interviews with managers, supervisors, and employees. We also hired independent experts to study staffing numbers, workers' compensation claims, sick leave usage, and traffic level complexity at the facility.

7. The assessment culminated in a report issued on June 2, 2005. The report made a number of crucial findings, including the following: the unreported errors did not jeopardize safety; the facility was not understaffed; a program to correct performance deficiencies by employees had been ineffective; the facility had the highest overtime cost per operation of any large facility; scheduling practices required unnecessary overtime; schedule manipulation, low time-on-position, inappropriate use of sick leave, and high rates of workers' compensation claims contributed to the high cost per air traffic operation at the facility; and a culture of insubordination and intimidation existed at the facility. The report made a number of recommendations to improve the situation.

8. Essential to the assessment and to the preparation of the final report were open, frank, and candid discussions between team members and other agency personnel.

9. On August 10, 2005, the National Air Traffic Controllers Association

2

(NATCA) submitted a request under the Freedom of Information Act (FOIA) for records relating to this assessment.

    10. In its FOIA request, NATCA sought:

(1) Any and all records reflecting each FAA employee or contractor (including his or her name, title, and job function) that, regardless of their location, is currently participating or has previously participated in the New York TRACON Operational Assessment Overview (NY TRACON Overview) which began on March 1, 2005.

(2) Any and all records for each FAA employee or contractor that is currently participating or has previously participated in the NY TRACON Overview that reflect the following information:
    (a) operational experience and location(s) of such;
    (b) specific expertise related to staffing analysis;
    (c) specific expertise related to human factors;
    (d) approximate number of hours spent participating in the NY TRACON Overview;
    (e) annual salary; and
    (f) travel and per diem expenses paid for activities associated with the NY TRACON Overview.

(3) Any and all records for each employee that is currently participating or has previously participated in the NY TRACON Overview that reflect in the following information:

    (a) credit hours earned;
    (b) compensatory time earned; and
    (c) overtime paid.

(4) Any and all records reflecting the cost of printing and distributing the NY TRACON overview.

(5) Any and all records that the FAA relied upon in making its determination to initiate the NY TRACON Overview.

(6) Any and all records reflecting the FAA's rationale for initiation of NY TRACON Overview that were disseminated to each FAA employee or contractor that is currently participating or has previously participated in the New York TRACON Overview.

(7) Any and all records reflecting the cost of media and public relations activities related to publication, distribution, and/or explanation of the NY TRACON Overview.

(8) Any and all records reflecting contracts between the FAA and service providers and/or contractors for services rendered in association with the NY TRACON, including, but not limited to, the evaluation of operational errors.

3

(9) Any and all records produced by FAA employees, service providers, and/or contractors concerning the NY TRACON Overview, including, but not limited to, the evaluation of operational errors.

(10) Any and all correspondence between FAA management and/or any agent thereof and the Office of Inspector General, Office of Special Counsel, Civil Aviation Security, Aviation Medical, and any other law or regulatory agency and/or any agent thereof that contains information relating to the NY TRACON Overview, including, but not limited to, correspondence regarding evaluation of operational errors.

11. Regarding Items 1, 2, and 3 in NATCA's FOIA request, the FAA has released to NATCA a spreadsheet entitled, "New York Tracon Oversight Assessment Team," which covers these items.

12. Regarding Item 4, the records reflecting the cost of printing and distribution of the report are located in the Crown contract, which is Document No. 216 in the Vaughn index that accompanies this declaration.

13. Regarding Item 7, there were no costs associated with media and public relations.

14. As for the remaining items, other than as indicated in the attached Vaughn index, the FAA has released all responsive documents to NATCA in full.

15. I have personally reviewed the documents responsive to the FOIA request that the agency has redacted or withheld, including those described in the attached Vaughn index.

16. Under Exemption 4, which protects commercial and financial information, the agency has redacted the names of contractor employees and subcontractors, as well as salary and pricing information, from Documents 1-5 and 216 of the Vaughn index, because the contractor has informed us that it objects to the release of this information due to concerns about employee raiding and underbidding by competitors. Because of

4

the danger that release of this material would cause the contractor substantial harm, I have determined that Exemption 4 protects this information.

17. I have also determined that the release of the redacted or withheld material identified in the index as deliberative and protected by Exemption 5 (Docs. 6, 8, 11-15, 18-20, 23, 25-26, 29-30, 46, 49, 55-100, 102-189, 193-214) would discourage the open, frank, and candid discussions between agency employees that are critical to the agency's decision-making process and to the public good. It would also create confusion in those cases where preliminary data later turn out to be incorrect or where certain recommendations and opinions are not adopted. For these reasons, I believe it is essential for the overall effectiveness of the agency's decisionmaking process that the redacted and withheld deliberative material be protected from disclosure under the FOIA.

18. I have determined that the release of the portion of the redacted material identified in the index as protected by Exemption 6 (Docs. 19, 30) would constitute a clearly unwarranted invasion of privacy. This material includes personal e-mail addresses of employees and their personal – home and cellular – telephone numbers. Regarding this information, I have carefully weighed the public's right to disclosure against the privacy interest in nondisclosure, and I have found that the individual's privacy interest outweighs any public interest.

_[signature]_
James D. Fossey
Director of Safety Evaluations
Safety Services
Air Traffic Organization

Executed on this _8th_ day of _June_, 2006, at _MSP ATCT_.

5